

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
LASALLE BANK NATIONAL
ASSOCIATION, TRUSTEE FOR                     :
CERTIFICATEHOLDERS OF
COMMERCIAL MORTGAGE                          :
PASS-THROUGH CERTIFICATES,
SERIES 2002-MWI, BY AND THROUGH              :
GMAC COMMERCIAL MORTGAGE
CORPORATION AS SPECIAL SERVICER,             :

        Plaintiff,                          :

            v.                            :

MERRILL LYNCH MORTGAGE                       :
LENDING, INC.,
                                             :
        Defendant.
-----------------------------------x

**OPINION AND ORDER**

04 Civ. 5452 (PKL)

**APPEARANCES**

AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022

Charles D. Riely, Esq.

PATTON BOGGS LLP
2001 Ross Avenue
Dallas, Texas 75201

Talcott J. Franklin, Esq.
Cole A. Wist, Esq.
Nicola M. Shiels, Esq.

Attorneys for Plaintiff

LANDMAN CORSI BALLAINE & FORD P.C.
New York, New York 10271
120 Broadway
27th Floor
New York, New York 10271-0079

Mark S. Landman, Esq.

POLSINELLI SHALTON WELTE SUELTHAUS PC
700 West 47th Street
Suite 1000
Kansas City, Missouri 64112

Daniel J. Flanigan, Esq.
Paul D. Snyder, Esq.
Amy E. Hatch, Esq.

Attorneys for Defendant



**LEISURE, District Judge:**

Defendant Merrill Lynch Mortgage Lending, Inc. ("Merrill") previously moved the Court for a protective order seeking the return of a draft letter (the "Draft Letter") that was inadvertently disclosed to plaintiff LaSalle Bank National Association, Trustee for Certificateholders of Commercial Mortgage Pass-Through Certificates, Series 2002-MWI, by and through GMAC Commercial Mortgage Corporation as Special Servicer ("LaSalle") during discovery.  Merrill claims the Draft Letter is either subject to an attorney-client or attorney work product privilege.  United States Magistrate Judge Frank Maas denied defendant's motion in an oral ruling on September 20, 2005. Merrill now objects to Magistrate Judge Maas's ruling pursuant to Federal Rule of Civil Procedure 72(a).  For the reasons that follow, Merrill's objection is DENIED.

<strong>BACKGROUND</strong>

I.   The Relevant Factual History

    A.   The Inadvertent Disclosure of the Draft Letter

This breach-of-contract action concerns Merrill's sale of a certain commercial real estate mortgage loan into a pool of similar loans in connection with a commercial mortgage-backed securities offering.  In short, plaintiff alleges Merrill breached a number of express warranties in a Mortgage Loan



Purchase Agreement and a Pooling and Service Agreement that governed the sale of the loan.[1]

Plaintiff served its First Request for Production of Documents on Merrill on November 15, 2004, and Merrill in turn served its Responses to the First Document Requests on December 22, 2004. (Def.'s Mem. Supp. Objections 2.)   Thereafter, between January and May 2005, Merrill produced over 15,000 pages of documents to plaintiff.   Merrill withheld from that initial production approximately 2,500 pages of documents that it believed to be subject to an attorney-client privilege.   It accordingly served plaintiff with a privilege log identifying the purportedly privileged documents. (Def.'s Mem. Supp. Objections 2.)

Included among the documents withheld by Merrill were the Draft Letter and an accompanying cover e-mail written by Merrill's in-house counsel to David Wolin, Esq., Merrill's outside counsel at the Baker & McKenzie law firm. (Def.'s Mem. Supp. Objections 2.)   The Draft Letter, which Merrill alleges was prepared some time in 2003, was addressed to Wachovia Securities ("Wachovia") and concerned Wachovia's servicing of the loan at the center of this dispute. (Def.'s Mem. Supp. Objections 2-3.)   The Draft Letter addressed one of the issues

---

[1]   The full factual history of this matter is set forth at length in an Opinion and Order disposing of the parties' cross-motions for summary judgment that is being issued concurrently with this Opinion and Order.

being contested in this action.  The Draft Letter lacked a

signature block. (Def.'s Mem. Supp. Objections 3.)

Plaintiff served its Second Request for Production of

Documents on Merrill on June 24, 2005, and Merrill responded on

or about July 31, 2005, with a production of 20,000 pages of

documents. (Def.'s Mem. Supp. Objections 3; Pl.'s Mem. Opp'n

Objections 2.)  While Merrill excluded from this production

approximately 2,500 pages of documents on the ground that they

were subject to an attorney-client privilege, included was a

copy of the Draft Letter without its accompanying cover e-mail.

(Def.'s Mem. Supp. Objections 3.)

On August 16, 2005, plaintiff deposed a Merrill employee

named David Rodgers.  During Mr. Rodgers's deposition, plaintiff

introduced the Draft Letter as an exhibit and a source of

questioning for Mr. Rodgers.  After reviewing the Draft Letter

and conferring with Rodgers, Merrill's counsel stated that it

was "possibly an attorney/client communication," and then

confirmed that it was a draft letter sent by Rodgers to outside

counsel that, as such, "would, of course, be an attorney/client

communication." (Rodgers Dep. 128:20-129:23.)  Merrill's counsel

then permitted the questioning of Rodgers with respect to the

Draft Letter with the caveat that Merrill's "inadvertent

production" of the letter "can't be deemed as some general

waiver of the attorney/client privilege." (Rodgers Dep. 129:24-

130:13.)  He went on to state a number of additional times that

Merrill did not intend to allow, nor did the inadvertent

production of the letter serve as, a general waiver of the

attorney-client privilege Merrill had with Baker & McKenzie.

(Rodgers Dep. 130:14-132:22.)  The parties' counsel agreed that

plaintiff did not intend to question Rodgers as to the attorney-

client communications associated with the document and

questioning then resumed. (Rodgers Dep. 131:22-132:3.)

On September 16, 2005, Merrill received plaintiff's

supplemental document production, which contained, inter alia,

an e-mail written by plaintiff's expert to plaintiff's counsel

in which the former characterized the Draft Letter as "about as

close to a smoking gun as one ever finds." (Riely Decl. Ex. D.)

That day, Merrill's counsel wrote to plaintiff's counsel,

requesting that the Draft Letter be returned. (Def.'s Mem. Supp.

Objections 6-7.)  When plaintiff declined, defense counsel

contacted the Court in writing to request the Court to order the

plaintiff's return of the document; plaintiff objected in

writing to the Court the following day. (Def.'s Mem. Supp.

Objections 7.)

B.  Magistrate Judge Maas's Ruling

Given defendant's request for an expedited hearing on its

request for a protective order relating to the Draft Letter,

Magistrate Judge Maas held a telephonic hearing on September 20,

4

2005.  During the hearing, plaintiff argued that defendant had
failed to establish that the Draft Letter was in fact an
attorney-client communication subject to a privilege, and that,
even assuming defendant had made such a showing of privilege,
the privilege was waived. (Hr'g Tr. 13:8-16:21, Sept. 20, 2005.)
Defendant argued generally that the Draft Letter was subject to
the attorney-client privilege, and that there had been no
inadvertent waiver. (Hr'g Tr. 2:25-3:17, 4:4-14, 4:23-6:14, 7:1-
8:17.)

    Magistrate Judge Maas ruled orally that, notwithstanding
the question whether the Draft Letter was in fact subject to an
attorney-client privilege, "it seems to me the colloquy at the
deposition of Mr. Ro[d]gers and the specific questioning that
was allowed does amount to a waiver with respect to this
document." (Hr'g Tr. 23:3-5.)  Magistrate Judge Maas
acknowledged that this action is a document-intensive one and
that he understood how the Draft Letter could have been
inadvertently produced, particularly because the letter uses the
words "we" and "us," thus lulling one into the belief that it
was drafted by someone at Merrill and not outside counsel. (Hr'g
Tr. 23:6-13.)

    However, when the disclosure of the document was made
apparent on August 16, 2005, defendant had "a duty to act
promptly to seek the return of the document if indeed the

privilege wasn't waived by the questioning at the deposition."
(Hr'g Tr. 23:15-18.)  Most important, the Court found that
because defendant waited one full month after learning of
disclosure to retrieve the document (ostensibly because
plaintiff's expert had just referred to the document as a
"smoking gun" that same day), such inaction warranted a finding
of waiver. (Hr'g Tr. 23:18-25.)

     As for defendant's argument that fundamental fairness
weighed in favor of finding no waiver, the Court balanced the
prejudice to defendant with the prejudice inflicted upon
plaintiff:  plaintiff's counsel had relied on the document on
the record to direct its lines of questioning in various
depositions. (Hr'g Tr. 24:1-12.)  Magistrate Judge Maas then
denied defendant's application, making no finding as to any
argument that a broader subject matter waiver had been made.
(Hr'g Tr. 24:19-25.)

**DISCUSSION**

I.   <u>Standard of Review</u>

     Federal Rule of Civil Procedure 72(a) provides as follows:

> Within 10 days after being served with a copy of the
> magistrate judge's order [on a nondispositive matter],
> a party may serve and file objections to the order . .
> . .  The district judge to whom the case is assigned
> shall consider such objections and shall modify or set
> aside any portion of the magistrate judge's order
> found to be clearly erroneous or contrary to law.

6



Fed. R. Civ. P. 72(a); see 21 U.S.C. § 636(b)(1)(A) (2000) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990) (stating nondispositive matters are "reviewable by the district court under the 'clearly erroneous or contrary to law' standard"). Merrill timely served and filed its objections on September 28, 2005. Plaintiff does not dispute this fact.

A district court is justified in finding a magistrate judge's finding "clearly erroneous" where, "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Labarge v. Chase Manhattan Bank, No. 95 Civ. 173, 1997 WL 583122, at *1 (N.D.N.Y. Sept. 3, 1997) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)); accord Am. Rock Salt Co., LLC v. Norfolk S. Corp., 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005) ("[R]eversal is warranted only if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" (quoting Easley v. Cromartie, 532 U.S. 234, 242 (2001))); United Parcel Serv. of Am., Inc. v. The Net, Inc., 222 F.R.D. 69, 70-71 (E.D.N.Y. 2004) ("An order is 'clearly erroneous' only when 'the reviewing court on the entire evidence is left with the definite

7

and firm conviction that a mistake has been committed.'"
(quoting <u>Thompson v. Keane</u>, No. 95 Civ. 2442, 1996 WL 229887, at
*1 (S.D.N.Y. May 6, 1996))).  Consequently, "parties seeking to
overturn the Magistrate's discovery rulings 'bear a heavy
burden.'"  <u>Citicorp v. Interbank Card Ass'n</u>, 87 F.R.D. 43, 46
(S.D.N.Y. 1980); <u>accord Com-Tech Assocs. v. Computer Assocs.
Int'l, Inc.</u>, 753 F. Supp. 1078, 1099 (E.D.N.Y. 1990) (same); 12
Charles Alan Wright et al., <u>Federal Practice and Procedure</u> §
3069, at 350-51 (2d ed. 1997) ("[I]t is extremely difficult to
justify alteration of the magistrate judge's nondispositive
actions by the district judge.").

     Given such a highly deferential standard of review,
magistrate judges are afforded broad discretion and "reversal is
appropriate only if that discretion is abused."  <u>Standard Forex</u>,
882 F. Supp. at 42; <u>accord Doe v. Marsh</u>, 899 F. Supp. 933, 934
(N.D.N.Y. 1995) (stating abuse-of-discretion standard applies).
The Court now turns to the applicable substantive standards.

II.  <u>Inadvertent Disclosure</u>

     In this district, the inadvertent producer of a privileged
document during discovery "may demonstrate, in appropriate
circumstances, that such production does not constitute a waiver
of the privilege or work-product immunity and that it is

8

entitled to the return of the mistakenly produced documents."[2]
Lava Trading, Inc. v. Hartford Fire Ins. Co., No. 03 Civ. 7037,
2005 WL 66892, at *2 (S.D.N.Y. Jan. 11, 2005); accord United
States v. Rigas, 281 F. Supp. 2d 733, 738 (S.D.N.Y. 2003)
(same).  Courts balance the following four factors in assessing
such a demonstration:  (1) the reasonableness of the precautions
taken by the disclosing party to prevent inadvertent
disclosures; (2) the length of time taken by the disclosing
party to redress or cure the error; (3) the size of the
disclosure relative to the entire volume of discovery involved;
and (4) the overarching issue of fundamental fairness and
protection of the privilege. Lois Sportswear, U.S.A., Inc. v.
Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985); accord
MSF Holding, Ltd. v. Fiduciary Trust Co. Int'l, No. 03 Civ.
1818, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005) (stating
and applying the Lois factors); Rigas, 281 F. Supp. 2d at 738
(same).

---

[2]  This "middle-of-the-road" approach lies between, on the one hand, a lenient
approach in which waiver is found only where the disclosing party intended to
do so, and, on the other hand, a strict approach in which an inadvertently
disclosed document is deemed waived regardless of intent. See, e.g., In re
Natural Gas Commodity Litig., 229 F.R.D. 82, 86 n.6 (S.D.N.Y. 2005); United
States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). See generally 3
Margaret A. Berger & Jack B. Weinstein, Weinstein's Federal Evidence §
503.42[4] (Joseph M. McLaughlin ed., 2d ed. 2005).

III.  Application of the Lois Factors to Defendant's Arguments

    A.  The Reasonableness of Precautions Taken

      The first Lois factor -- the reasonableness of the precautions taken to prevent inadvertent disclosure -- weighs in favor of finding waiver.  Here, defendant claims it conducted a page-by-page review of its document disclosures by one of two attorneys, resulting in the retention of approximately 2,500 privileged documents in each of two document disclosures. (Def.'s Mem. Supp. Objections 2-3.)  While such a measure normally weighs against a finding of waiver, see, e.g., In re Natural Gas Commodity Litig., 229 F.R.D. 82, 86-87 (S.D.N.Y. 2005), it is severely undercut, as Magistrate Judge Maas noted, by the absence of another entirely fundamental precaution, to wit, the failure to notate the subject document with any sign of its attorney-client or attorney work product nature.  Courts have frequently found that a disclosing party's failure to include a legend or other notation identifying the document as an attorney-client communication or one prepared in anticipation of litigation weighs toward a finding of waiver, see, e.g., MSF Holding, Ltd., 2005 WL 3338510, at *2 (holding that failure to include an attorney-client privilege legend in inadvertently disclosed e-mail communications weighed in favor of a finding of waiver under the first Lois factor); Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc., 232 F.R.D. 160, 164 (E.D.N.Y.

2005) (holding that first <u>Lois</u> factor weighed in favor of
dismissal where "counsel failed to label the documents
'confidential' or 'privileged' so as to put others on notice of
their privileged nature"); <u>Spanierman Gallery, Profit Sharing
Plan v. Merritt</u>, No. 00 Civ. 5712, 2003 WL 22909160, at *3
(S.D.N.Y. Dec. 9, 2003) (finding waiver of privilege where
subject documents "were not labeled 'confidential' or
'privileged'"); <u>Local 851 of Int'l Brotherhood of Teamsters v.
Kuehne & Nagel Air Freight, Inc.</u>, 36 F. Supp. 2d 127, 132
(E.D.N.Y. 1998) (weighing the first <u>Lois</u> factor in favor of a
finding of waiver where, "[m]ost notably, defendants' counsel
failed to label the Letter as confidential or to employ a
procedure for separating confidential communications from non-
privileged material"); <u>United States v. Gangi</u>, 1 F. Supp. 2d
256, 265 (S.D.N.Y. 1998) (finding precautions to be unreasonable
where, <u>inter alia</u>, "[t]he Government did not label the
Prosecution Memorandum 'confidential,' 'privileged,' or 'work
product'").

Additionally, while the Court recognizes that where an
inadvertently disclosed document appears in a privilege log
given to the disclosing party's adversary, the disclosing
party's adversary is essentially on notice that the production
of a document in the log was likely inadvertent, <u>see</u> <u>Liz
Claiborne, Inc.</u>, 1996 WL 668862, at *4, the Court finds that the

11

force of this proposition is severely weakened where, as here, the disclosing party allows deposition questioning as to the contents of the document and thereafter fails to request the document's return.

B.    Time Taken to Rectify an Inadvertent Disclosure

Magistrate Judge Maas correctly placed great weight on Merrill's failures with respect to the second Lois factor -- viz., the promptness of efforts undertaken to rectify the error. See generally 3 Margaret A. Berger & Jack B. Weinstein, Weinstein's Federal Evidence § 503.42[4] (Joseph M. McLaughlin ed., 2d ed. 2005) ("In applying these factors, the courts give great significance to the promptness of measures taken to rectify the disclosure.  If the attorneys themselves have done little to repair the damage caused by their own mistake, courts feel little obligation to intervene.").  While an inadvertent disclosure may be remedied where the privilege is immediately asserted upon discovery of the disclosure, and a "prompt request" is made for the return of the document(s), Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., No. 96 Civ. 2064, 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996), courts faced with less-than-prompt return requests, as is the case here, weigh such delay in favor of a finding of waiver, see, e.g., SEC v. Cassano, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) ("Although the SEC acted promptly once it determined that the

12

document had been produced, a factor cutting in its favor, the time taken to rectify the error, in all the circumstances, was excessive.  There was no excuse for waiting 12 days to find out what the document was."); Liz Claiborne, Inc., 1996 WL 668862, at *5 ("Plaintiffs' counsel waited a month before requesting that Mademoiselle return the Privileged Notes.  Plaintiffs' delay in requesting the return of the privileged documents supports a finding of waiver.").

   This is not a case in which defense counsel acted in a prompt fashion -- i.e., within a day or two -- as to warrant a finding of no waiver. See, e.g., United States v. Rigas, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) (weighing timeliness factor in favor of disclosing party where, inter alia, it contacted its adversary the same day of disclosure to demand document's return); Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590, 1997 WL 736726, at *6 (S.D.N.Y. Nov. 26, 1997) ("No inordinate delay occurred in this case because Prescient's counsel wrote defendants' counsel the day after learning of the error to demand return of the documents."); Georgia-Pacific Corp. v. GAF Roofing Mfg. Co., No. 93 Civ 5125, 1995 WL 117871, at *2 (S.D.N.Y. Mar. 20, 1995) ("Nor did GAF's counsel's delay in asserting the privilege constitute a waiver of the privilege. Mr. Kneller acted within two business days after discovery of his inadvertence.").

13

C.   Scope of Discovery

The third <u>Lois</u> factor -- the size of the inadvertent
disclosure relative to the entire volume of discovery involved
-- does not weigh in favor of a finding of waiver, nor did
Magistrate Judge Maas attribute such weight to this factor.   The
Draft Letter is four pages long, while Merrill produced
approximately 40,000 pages of documents to plaintiff during
discovery.   Courts have found that inadvertent disclosures of
similar proportion do not compel a finding that a privilege has
been waived. <u>See, e.g.</u>, <u>Prescient Partners, L.P.</u>, 1997 WL
736726, at *6 ("'Courts have routinely found that where a large
number of documents are involved, there is more likely to be an
inadvertent disclosure rather than a knowing waiver.'" (quoting
<u>Baker's Aid v. Hussmann Foodservice Co.</u>, No. 87 Civ. 0937, 1988
WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988))); <u>Martin v. Valley</u>
<u>Nat'l Bank of Ariz.</u>, No. 89 Civ. 8361, 1992 WL 196798, at *4
(S.D.N.Y. Aug. 6, 1992) (finding that the third <u>Lois</u> factor did
not weigh in favor of waiver where five documents were
inadvertently disclosed out of a total of more than 50,000 pages
of documents produced in discovery).

D.   Overarching Issues of Fundamental Fairness

Finally, while Magistrate Judge Maas weighed the inevitable
prejudice to Merrill in finding that any privilege as to the
Draft Letter had been waived, he also rightly recognized the

14

converse prejudice to plaintiff if the inadvertent disclosure were found to not serve as a waiver.  Plaintiff directed its discovery efforts and, more specifically, its lines of questioning in depositions, based on the existence of the Draft Letter in the record.[3]  Moreover, the Court adds that defendant's rather significant delay in even addressing the inadvertent disclosure which, whether causally or not, followed plaintiff's expert's "smoking gun" statement, severely undermines its contention that it has been unfairly prejudiced. See Lava Trading, Inc. v. Hartford Fire Ins. Co., No. 03 Civ. 7037, 2005 WL 66892, at *3 (S.D.N.Y. Jan. 11, 1995) ("Furthermore, Hartford's delay undercuts any contention by defendant that fairness compels the return of the unredacted documents."). Magistrate Judge Maas did not abuse his discretion in weighing this factor and in holding that any asserted privilege had been waived. See, e.g., Commodity Futures Trading Comm'n v. Standard Forex, Inc., 882 F. Supp. 40, 42 (E.D.N.Y. 1995).

## CONCLUSION

For the foregoing reasons, defendant's objection to Magistrate Judge Maas's ruling that any privilege asserted as to the Draft Letter had been waived by its inadvertent disclosure to plaintiff is DENIED.  Magistrate Judge Maas's ruling was

---

[3]  Magistrate Judge Maas stated that "because [plaintiff's counsel] was allowed to question about the [Draft Letter] and because those questions are part of the record[,] LaSalle has foregone asking questions at certain depositions." (Hr'g Tr. 24:9-12.)

neither clearly erroneous nor contrary to law.  The Court

reaffirms Magistrate Judge Maas's finding that the waiver was

specific to any privilege concerning the Draft Letter; there is

no finding that a more general waiver was made.

**SO ORDERED.**
**New York, New York**

August *13*, 2007

U.S.D.J.

16